The Honorable Mike Kinard State Senator P.O. Box 727 Magnolia, Arkansas 71753
Dear Senator Kinard:
This is in response to your request for an opinion on several questions concerning the gross receipts tax and severance taxes. Specifically, you note that a constituent is concerned about a recent "ruling" by the Department of Finance and Administration which changes the prior gross receipts tax rules on Christmas trees grown on his property. You request an opinion on this matter, and also wish to know whether Christmas trees cut from the growers's property are subject to severance taxes, and if so, how they would be computed. Lastly, you inquire as to whether certain "operations" you know of which cut cedar, boisd'arc, and pine trees for fence posts are subject to the gross receipts tax.
In response to your first questions, please note that I have enclosed a copy of Opinion No. 89-318, recently issued to Senator Knox Nelson, which I believe answers your first question fully.
Your second question involves severance taxes. Such taxes are authorized in A.C.A. 26-58-101 ET SEQ. Severance taxes are levied by the state on "producers" of natural resources, including timber, in the state. A.C.A. 26-58-107. A "producer" is someone who "severs" the natural resources or timber. A.C.A.26-58-101(9). Your second question is whether such taxes are applicable to the "severing" of Christmas trees from the grower's property. It is my opinion that they are not.
The first provision applicable to this question is A.C.A.26-58-101(6), which defines "timber" as follows:
 `Timber' means either softwood or hardwood species of trees suitable for use as sawlogs, pulpwood, veneer bolts or billets, stave bolts or billets, and splits, handle and other bolts or billets including chemical wood, cross ties, posts poles, piling, chips, charcoal, or any now known or hereafter discovered use of wood or wood pulp.
It is questionable whether this definition would include Christmas trees, although it could be argued that they would constitute "softwood or hardwood . . . trees suitable for . . . any . . . known . . . use of wood". It is my opinion, however, that it is unnecessary to decide whether Christmas trees fall within this definition, because even if they do, there is no mechanism for computing a severance tax on Christmas trees under the existing statutes.
Severance taxes on "timber" are computed in accordance with A.C.A.26-58-111(7), which provides in pertinent part as follows:
 (7) On timber, the tax shall be collected, reported, and remitted by each primary processor and shall be computed on the weight of such timber as determined at the last time the timber is weighed prior to undergoing the first processing after severance thereof. . . .
A "primary processor" is defined at A.C.A. 26-58-101 (5) as follows:
 (5) "Primary processor" means any person, firm, corporation, or other entity engaged in business as a sawmill, chipper mill, stud mill, square mill, plywood or veneer mill, whole tree chipping mill, post, pole, or piling plant, charcoal plant, processed board mill, bolt working mill, pulp mill, planing or surfacing mill, or other mill or facility where timber first undergoes any processing after harvesting.
Christmas trees, to my knowledge, do not undergo any such processing, and would ordinarily not be in the hands of any "primary processor". There is thus no statutory mechanism for the reporting and collecting of a severance tax on Christmas trees. The severance taxes on "timber", under the statutes, are to be computed and remitted by the primary processors. There are no "primary processors", as that term is defined, involved in the sale of Christmas trees from a grower's farm directly to the consumer. It is thus my opinion that severance taxes are not collectible, under current statutes, on the sales of Christmas trees made in this manner.
Your third question involves the charging of gross receipts tax by certain "operations" which cut cedar, boisd'arc, and pine trees for fence posts. You inquire as to whether these operations should be collecting the gross receipts tax.
It should be noted initially that the gross receipts tax is levied on all "tangible personal property". A.C.A. 26-52-301 (1) (Supp. 1989). This is a very board category of property and includes all TANGIBLE personal property, unless it is specifically exempt under26-52-401. Thus, we start with the proposition that the sales of "property" by these "operations" are subject to the gross receipts tax, unless they are covered by a specific exception in 26-52-401. The only exemption which could conceivable exempt these sales, in my opinion, is 26-52-401(19)(C), which exempts the following:
 (C) Gross receipts or gross proceeds derived from the sale of raw products from the farm, orchard, or garden, where the sale is made by the producer of the raw product directly to the consumer and user.
This exemption only applies to "raw products" from the "farm, orchard, or garden" sold by the producer thereof directly to the consumer. Other provisions require that the sale be made at a non-established place of business, or on the farm itself, and that the products be produced in this state. A.C.A. 26-52-401 (18) (E) and (F)(i).
It should be noted initially that the exemption only applies to "raw products". Thus, if the "operations" to which you refer actually process the raw trees into fence posts, they are not selling "raw products" and the exemption has no applicability. If this is the case, the sale of these fence posts are probably subject to sales tax. If not, however, and the trees are sold in their raw state, so that the purchaser thereof can process the raw product into fence posts, we must continue our analysis to determine whether these raw products are sold from a "farm, orchard, or garden" from the producer thereof directly to the consumer.
We have not been provided with information sufficient to determine whether sales from these operations are being made from a "farm". We assume that they are not being made from a garden or orchard. The word "farm" is defined as "a tract of land devoted to agricultural purposes". WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY, (1972) at page 302. "Agriculture" is defined as "the science or art of cultivating the soil, producing crops, and raising livestock". WEBSTER'S SUPRA at p. 18. "Crop" is defined as "a plant or animal or plant or animal product that can be grown and harvested extensively for profit or subsistence". WEBSTER'S SUPRA, at p. 198. It is arguable, (although in my opinion the argument is very tenuous), that trees which are grown and harvested for the purpose of selling for future processing into fence posts, constitute plants which can be grown and harvested extensively for profit and thus constitute "crops" which are "agricultural" in nature, and are thus grown on a "farm".
It is conceivable, then, that if the owners of these "operations" are cultivating trees in Arkansas for the purpose of selling them in their pristine state directly from their "farms" or other non-established places of business to consumers, the sales would be exempt from the Arkansas gross receipts tax under26-52-401(18)(C). Otherwise, such sales are likely subject to the tax. Again, if is difficult, without more specific facts, to predict the outcome of the question with any certainty.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.